(28 App. Div. 480.)

### PEOPLE ex rel. SHEA v. BRYANT et al.

(Supreme Court, Appellate Division, Second Department.    April 19, 1898.)

1. FIREMEN—PLACING ON PENSION ROLL.
    A proceeding terminating in the retirement of a member of the fire department of Brooklyn, and the placing of his name on the pension roll, under Laws 1894, c. 708, was not a proceeding for "removal" under the statute prohibiting a removal except after a public trial by the fire commissioner (Laws 1888, c. 583, tit. 13, § 9, as amended by Laws 1889, c. 371).

2. SAME—REINSTATEMENT.
    A fireman who was retired by the former Brooklyn commissioner after a determination by the statutory board that he was permanently disabled, does not become entitled to reinstatement simply by reason of subsequent recovery.

3. SAME—FINDING AS TO DISABILITY.
    A finding by a retiring board that a member of the fire department "is not competent physically to perform the duties of a fireman" is not equivalent to a finding of permanent disability, and did not warrant the placing of his name on the pension roll under Laws 1894, c. 708.

4. MANDAMUS—REINSTATEMENT OF FIREMAN—DELAY.
    In a proceeding for a mandamus to compel the reinstatement of the relator to a position in the Brooklyn fire department, it appeared that the proceedings in which he had been retired were irregular, but that he had allowed two years to elapse before instituting the mandamus proceeding. His papers failed to show whether he had drawn his pension during this period, or whether the position in question had in the meantime been filled. *Held*, under the circumstances, that, unless explained, the acquiescence and delay should be a bar to the remedy sought.

Appeal from special term, Kings county.

Mandamus by the people, on the relation of John F. Shea, against William C. Bryant as fire commissioner of the city of Brooklyn, and John J. Scannell as successor.    From an order granting the writ commanding the fire commissioner to reinstate relator in his former position as an active member of the uniformed fire department formerly of Brooklyn, but now of the city of New York, defendant Scannell appeals.    Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks, for appellant.
Thomas F. Magner, for respondent.

WILLARD BARTLETT, J.    On the 1st day of July, 1895, the relator was appointed a member of the uniformed force of the fire department of the city of Brooklyn.    He duly entered upon his duties, and continued to perform them until the 14th day of November, 1895, when his name was placed upon the pension roll of the Firemen's Insurance Fund, by order of the commissioner of the fire department, who granted to him a pension of $100 per annum from the said fund, to date from December 1, 1897.    At the time of this action on the part of the commissioner his authority for placing the name of a fireman on the pension roll was found in chapter 708 of the Laws of 1894, which provided as follows:  .

"Any officer or member of the fire department who shall, while in the actual performance of his duty, and by reason of such performance of duty, and with-

out fault or misconduct on his part, become permanently disabled, physically or mentally, so as to be unfitted to perform duty, * * * may be placed on the pension-roll of the firemen's insurance fund, and granted and paid a pension of not exceeding one-half of the annual compensation allowed such officer or member as salary at the date of his retirement from the service from the said fund. In every case the circumstances thereof shall be determined by a board to be composed of the deputy commissioner, the chief engineer, and a surgeon of the department, who shall report all the facts in every case to the commissioner."

The circumstances which led to the retirement of the relator, as determined by the statutory board, were that at the date of their report on November 13, 1895, he was troubled with frequent coughs, copious expectoration, excess of temperature, loss of appetite, and a diminution of weight estimated at 30 pounds within three months. The board also determined, upon these facts, and upon the opinion of the surgeon, who was one of the members of the board, that the relator was physically incapable of performing the duties required by his position in the fire department, and recommended that he be retired, inasmuch as his disability was not caused by any fault or misconduct on his part, but was contracted while in the service, and in the regular performance of duty. After thus being retired, the relator went to Colorado, and he alleges that after a residence of seven months in that state he entirely recovered from the effects of the severe cold which was the cause of his retirement. He then returned to Brooklyn, and subsequently made the application which has resulted in the order for his reinstatement, from which the present appeal is taken.

I cannot agree with the learned counsel for the relator that the proceeding which terminated in the retirement of his client was a proceeding for the removal of the relator, within the meaning of that provision of the charter of the city of Brooklyn which prohibited the removal of any person employed in the fire department except after a public trial by the fire commissioner. Chapter 583, tit. 13, § 9, Laws 1888, as amended by chapter 371, Laws 1889. The retirement of fireman on account of disability incurred while in the public service is no more a removal than is the retirement of a military or naval officer in the service of the United States for a similar reason. The purpose of the proceeding is to benefit the person proposed to be retired by conferring upon him the right to continued compensation from the state without exacting the performance of any further duty in return therefor. The removal contemplated by the charter provision to which reference has been made is a proceeding distinctly adverse to the person sought to be removed, and which, if carried out, must result to his detriment. In the retirement proceedings, of course, the relator was entitled to notice of the steps which were taken with a view to placing his name upon the pension roll; but there is nothing in the record to indicate that he did not receive adequate notice in all respects. Nor can I acquiesce in the view which was evidently entertained by the counsel who prepared the papers upon which the relator's application was based, to the effect that a fireman who has been retired by the commissioner, after a determination by the statutory board that he is permanently disabled to perform

duty, becomes entitled to reinstatement by reason of a subsequent recovery, which shows that the conclusion of the board was, in fact, erroneous. The determination of the statutory board as to the existence of permanent disability, once fairly made, cannot be questioned simply on the ground that the recovery of the retired fireman has disproved its correctness. To allow this to be done would introduce insufferable confusion and complication into the practical administration of the affairs of the fire department. The strength of the relator's position, however, lies in the fact that there never has been any determination in the case, either by the statutory board or by the commissioner of the fire department, that he was permanently disabled at all. The report of the retiring board merely declares that he "is not competent, physically, to perform the duties of a fireman," and that he is physically incapable of performing the duty required by his position in the department. This is by no means a finding that the relator was permanently disabled. It might be perfectly true at the time when the report was made, and yet not be true a week or a month later. Nor is the commissioner's order of retirement any more positive in this respect. It merely recites that the board has reported that the relator is physically incapacitated to perform the duties required by his position; and the only determination that it contains is the direction to place his name on the pension roll at the rate of $100 a year.

I think that the language of the statute plainly imports that the fact of permanent disability is to be determined and declared by the retiring board, as a condition precedent to action on the part of the commissioner placing the name of the fireman upon the pension roll. In the absence of such a determination, it seems to me that there was no legal basis for the retirement of the relator, and that he is entitled to be reinstated on this ground, unless his acquiescence in what was done by the department in his case, and his delay in applying to be restored, are obstacles which should prevent the court from granting this relief. The affidavit of the relator indicates that he must have returned from Colorado about August, 1896, yet he appears to have made no complaint to any officer of the fire department until May, 1897, and he did not institute the present proceeding until December 28, 1897,—more than two years after his retirement. The papers do not show whether or not he drew his pension for these two years, or whether any other person has been appointed to the active position in the fire department which was vacated when the relator's name was placed on the pension roll. It is essential that both these questions should be answered, and that the relator should offer such explanation as he can to account for his procrastination in seeking relief, before the court will be in a position fairly to determine whether such relief should or should not be denied to him on the ground of laches. In the case of People v. Justices of Court of General Sessions, 78 Hun, 334, 29 N. Y. Supp. 157, the general term of the First department held that an application for a peremptory writ of mandamus was properly denied upon the ground of laches where the relator, who claimed to have been unlawfully discharged from the office of a court attendant, waited eight months before making any application for reinstate-

ment.   Without insisting upon so stringent a limitation in the present case, it seems to us that the question of laches here should be passed upon in accordance with the rule laid down in the case of People v. Common Council of Syracuse, 78 N. Y. 56, where Church, C. J., said:

"When the relator has, for an unreasonable time, slept upon his rights, the court may, in the exercise of a sound discretion, refuse the writ.   In determining what will constitute such unreasonable delay, regard should be had to circumstances which justify the delay. to the nature of the case, and the relief demanded, and to the question whether the rights of the defendant or of other persons have been prejudiced by such delay."

Upon the record before us we think that the unexplained laches, and the language in the petition indicating that the relator himself really regarded and treated the action of the retiring board as a determination of permanent disability, although now, upon a critical examination, it proves not to have been so in fact, justify the conclusion that he acquiesced in all that the board and commissioner did in his case, and that he has slept upon his rights for a time which must be deemed unreasonable.   If nothing more can be shown in his behalf, this acquiescence and delay should be a bar to the remedy by mandamus.   In order, however, that he may have an opportunity to strengthen his case in this respect, if the facts will permit, an alternative writ should be allowed, upon the return to which he may fully litigate the questions of assent and laches.   It seems to us that the matter can thus be disposed of with most fairness to the relator and justice to the fire department.

Order for peremptory mandamus reversed, and alternative writ directed to issue, with $10 costs and disbursements to appellant, to abide the final award of costs.   All concur.