In the Matter of the Application of The People of the State of New York ex rel. Diamante Ragucci, Relator, for an Order of Mandamus against The City of Schenectady and Others, Respondents.*

Supreme Court, Schenectady County, November 24, 1928.

* Affd., 226 App. Div. 714.

*Walter F. Wellman* and *Ettore Mancuso*, for the relator.

*Carleton H. Lewis*, for the respondents.

GOLDSMITH, J. The relator, upon written application to the board of trustees of the permanent police pension fund of the city of Schenectady, was retired from duty as detective sergeant in the police department of said city on a pension. The retirement was authorized on December 30, 1924, effective the following day. The relator now claims that his separation from the police department was accomplished through fraud, deceit and duress and was illegal and void. He seeks an order of mandamus to reinstate him in his former position.

The moving papers of the relator disclose that during the year 1924 a period of lawlessness prevailed in the city of Schenectady, culminating, toward the end of the year, in the shooting of a patrolman and in two murders, one of the persons killed being the acting captain of police. Citizens of the city became aroused over the failure of the police department to afford them proper protection and the mayor, voicing the same sentiment, conveyed a communication to the commissioner of public safety, head of the police department, recommending a reorganization of that department and directing him to demand the retirement on a pension of the captain of police and of the relator, a detective sergeant. It

appears that the relator had been in the service of the police department of the city of Schenectady for more than twenty years and, under the provisions of section 3 of chapter 183 of the Laws of 1907, establishing a pension fund for the members of the police department of said city, the relator was eligible for retirement on a pension provided he could show that he was "permanently disabled, physically or mentally, so as to be unfitted to perform full police duty." The relator was informed by both the mayor and the commissioner of public safety that he should make application for his retirement on a pension and, in the event that he refused to do so, charges would be preferred against him for the purpose of forcing his removal from the police department. After the receipt of this information the relator, during the month of December, 1924, submitted to three separate physical examinations by the police surgeon, Doctor H. L. Towne. None of these examinations revealed any physical disability unfitting the relator for performance of his duties as a police officer. At one of the examinations Doctor Towne said to his assistant: "Mayor Campbell wants me to discriminate against this man [meaning the relator] and I cannot do it." The third report of Doctor Towne stated: "I still find him physically fit for a full police duty, in the absence of a specific standard for officers who have been serving for several years. We are right now trying to work out such a standard."

During the period covered by these physical examinations the press of the city had been publishing accounts of all of the events transpiring in the police department. The several physical examinations referred to herein were recounted in the newspapers with varying comment. The Schenectady *Gazette* reported that Doctor Towne was working to perfect a specific standard for the retirement of police officers pending a further examination of the relator. It was freely stated by the press that if the new standard did not permit the relator to retire on a pension, charges would be filed directed toward his involuntary removal from the department.

A fourth examination of relator was subsequently made presumably under the new standard and Doctor Towne then certified to the board of trustees that the relator "is entitled to retirement for the following reasons: 1. Because of a gun shot wound in the abdomen and several necessary operations following it. He has two potential hernias in one of the scars, which, in my opinion, will be permanent." The relator says that, while he never saw this certificate, he did rely upon Doctor Towne's statement to him that he was suffering from a potential hernia and was unfit for duty as a police officer and he thereupon, the same day, wrote to the board of trustees of the permanent police pension fund:

" Owing to my present physical condition, I hereby ask to be retired on a pension from active service and duty as a police officer of the City of Schenectady." The board of trustees met on the same day and granted the relator's request, effective December 31, 1924.

The relator urges that he accepted the advice of Doctor Towne in respect to his physical condition and that it was through the fraud and deceit of Doctor Towne, acting with the approval and under the direction of the mayor and the commissioner of public safety, that he was induced to apply for retirement on a pension. He contends that a potential her nia is not indicative of any present disability but is only descriptive of a condition which might develop in a hernia. He denies that he was suffering from physical unfitness for duty and claims that, because of the attitude of the city administration toward him and the critical conditions prevailing in the city, he was in an extremely nervous state and allowed himself to be retired from the department upon a certification of physical disability which never in fact existed.

This argument is not persuasive. All the events connected with relator's retirement were surrounded with great publicity and were brought to his attention, as his moving affidavits show. After three examinations which did not reveal any physical infirmity, he was willing to submit to a fourth examination under a standard which all of the facts alleged by him fairly indicate was purposely designed to facilitate his retirement. He was even willing to accept the statement of Doctor Towne after the fourth physical examination when he knew that Doctor Towne was being urged by the mayor to declare him unfit for duty. These facts show as much anxiety upon his part to be retired on a pension as there was upon the part of the city administration to secure his retirement from office.

Possibly he was uncertain concerning his standing in the department. In one affidavit he alleges that the mayor threatened to oust him upon charges and in another affidavit he sets up a copy of a letter from the mayor stating that relator's conduct in the department was honorable and his service efficient. Surely the whole situation was so unusual that it challenged relator's inquiry and his failure to investigate made him at least a passive, if not an active, participant in the alleged fraudulent scheme to retire him from his position. It would be straining credulity to concede upon relator's moving papers that, with his twenty years of experience in the police department, a threat of removal barren of any supporting evidence and a finding of incapacity for duty made after four physical examinations and after the establishment

of a new standard for retirement to justify such finding, should so disturb this police officer of high rank, mentally and physically, that he was induced to supinely submit to the views of his superiors who were admittedly hostile to him and to voluntarily transmit a request in writing to the board of trustees of the police pension fund for his retirement. It may be that the retirement of the relator was not authorized in fact but, the proceeding resulting in such retirement being sufficient upon its face, the court will not question it upon relator's application under the circumstances of this case. The relator has waived his right to dispute the validity of the proceeding resulting in his retirement and by his conduct has acquiesced in the decision of the trustees of the police pension fund in terminating his service in the police department. (*People ex rel. Shea* v. *Bryant,* 28 App. Div. 480.)

It is significant that after his separation from duty the relator made no formal application for reinstatement until December 30, 1925, and this proceeding was not instituted until September, 1928. Meantime the relator has been receiving the payments awarded to him from the pension fund. His laches and his actions confirm his acquiescence in the decision of the trustees of the police pension fund in effecting his relief from duty in the police department.

Application for an order of mandamus peremptory or alternative is denied.

Settle order.